Fredericka **FARRIS**, et al., Appellants,

v.

John W. **COMPTON**, Appellee.

No. 94–SP–179.

District of Columbia Court of Appeals.

Argued June 7, 1994.
Decided Dec. 29, 1994.

---

Keith A. Rosenberg, Washington, DC, for appellants.

John W. Karr, Washington, DC, for appellee.

Deborah A. Ellis, Sally F. Goldfarb, Lea Haber Kuck, and Anastasia Rockas, New York City, filed a brief in the U.S. Court of Appeals on behalf of the NOW Legal Defense and Educ. Fund, et al., amici curiae.

Before WAGNER, Chief Judge,[*] SCHWELB, Associate Judge, and MACK, Senior Judge.

SCHWELB, Associate Judge:

On June 19, 1991, Sara Fellez, now forty-nine years old, and her sister, Fredericka Farris, now forty-six, filed suit in the United States District Court against their brother, Dr. John W. Compton, now fifty-three, seeking compensatory and punitive damages for repeated acts of incestuous sexual abuse allegedly perpetrated upon them by Compton during their childhood and youth in Washington, D.C. in the 1950's and 1960's.[1] The women claimed that each of them had repressed her recollection of the abuse for more than twenty years, and contended that because of this repression, which was itself allegedly induced by Dr. Compton's wrongful acts, the statute of limitations was tolled until their memories were reawakened in 1990 as a result of therapeutic intervention. The district court granted Dr. Compton's motion to dismiss the complaint as time-barred. *Farris v. Compton*, 802 F.Supp. 487 (D.D.C. 1992) (*Farris I* ).

The plaintiffs appealed to the United States Court of Appeals for the District of Columbia Circuit, and that court has certified to us, pursuant to D.C.Code § 11–723 (1989), the question whether

> the discovery exception to the District of Columbia statute of limitations, D.C.Code § 12–301 [ (1993) ], extend[s] to a suit, brought twenty to forty years after alleged acts of sexual abuse, in which plaintiffs claim that they had repressed their memories of the acts of an older sibling which allegedly took place beginning at age four and during the teenage years for one plaintiff and beginning at age twelve and through the teenage years for another plaintiff.

■ It is not easy to defend against allegations of events said to have taken place a great many years ago. Nevertheless, accepting the allegations of the complaint as true

for the purpose of the certified question, we hold that the complaint is not time-barred. If, as a result of the defendant's wrongful conduct, either plaintiff's recollection of the relevant events has been repressed, and if she has thus been effectively precluded during the period of repression from seeking legal redress, then that plaintiff's right of action did not accrue until the date that she recovered her memory of the wrongful conduct.

## I.

## THE COMPLAINT

The plaintiffs in this case have alleged a long and sordid history of incestuous sexual abuse. Both women claim to have been raped and sodomized by their older brother, who is alleged to have been in a dominant position over them. The complaint alleges that he threatened to kill each of them if she reported his conduct. It is further alleged that Compton and his friends gang-raped the female plaintiffs during their pre-adolescent and teen years, and that he charged his friends money for allowing the friends to participate in the gang-rapes.

Dr. Compton's molestation of Ms. Fellez is ·alleged to have begun when she was twelve years old and he was sixteen, and it is said to have continued through her teens. The abuse of Ms. Farris, the younger of the two sisters, allegedly began when she was approximately four years old (Compton was then twelve). The complaint alleges that Compton continued to molest Ms. Farris until she was about eight, that he then apparently stopped, and that he subsequently resumed the wrongful activity during her teens. Although the complaint does not disclose precisely when the abuse is claimed to have ended, there appears to be no allegation that any of it occurred after Ms. Farris reached her twenty-first birthday in October 1969. We are therefore dealing with events which, if they happened at all, took place more than a quarter of a century ago.

---

[*] *Judge* WAGNER was an *Associate Judge* of this court at the time of argument. Her status changed to *Chief Judge* on June 14, 1994.

1. Ms. Fellez' husband, George Fellez, is also a plaintiff. He seeks recovery for loss of his wife's consortium.

The complaint alleges that Compton's wrongful conduct caused Ms. Farris and Ms. Fellez to develop severe psychological problems, including denial, repression, and accommodation and disassociation. They claim, in essence, that they were forced to separate themselves from the acts being performed against their will to their bodies. Consequently, each woman is alleged to have "repressed the existence" and "denied the most significant impact" of the alleged sexual abuse for many years. In 1990, however, each of the female plaintiffs, who were living two thousand miles apart, allegedly became able, as a result of "psychological evaluation and therapy," to "express those acts performed by the defendant which she had repressed since her childhood." The alleged realization that their brother had raped and sodomized them, and that his conduct accounted for a variety of physical and psychological conditions which are allegedly continuing to afflict each of them, led to the institution of this suit.

The complaint is somewhat hazy with respect to whether the repression of the events by Ms. Farris and Ms. Fellez over a period of more than twenty years is alleged to have been partial or total.[2] Because the question certified to us by the United States Court of Appeals apparently assumes that the plaintiffs have alleged total repression, we make the same assumption for purposes of this opinion.

In their seven-count complaint, the plaintiffs alleged that Dr. Compton's conduct constituted seven separate torts, namely gross negligence, assault and battery, incestuous abuse, intentional infliction of emotional distress, negligent infliction of emotional distress, false imprisonment, and invasion of privacy. The female plaintiffs alleged that Compton's abuse directly and proximately caused them extensive physical, psychological and economic injury. Each woman sought $2,000,000 in compensatory damages and $2,000,000 in punitive damages with respect to each count, for a total of $56,000,000.

George Fellez requested damages in the amount of $500,000 for loss of consortium.

Dr. Compton filed a motion to dismiss the complaint pursuant to FED.R.CIV.P. 12(b)(6), contending that the action was time-barred. On September 4, 1992, the district judge granted the motion. *Farris I, supra,* 802 F.Supp. at 490. The judge stated that unless the discovery rule applied, the complaint was plainly untimely. Reviewing this court's precedents, he concluded that in those cases in which the discovery rule has been successfully invoked, the plaintiff justifiably relied on the defendant's superior skill or knowledge, and the claimed injury was objectively verifiable. The judge thought that neither of these circumstances was present here, and wrote that

> [t]he sexual abuse of which these plaintiffs accuse the defendant continued far beyond their childhood years when it might be reasonable to assume that they were unaware of its wrongful character or how to stop it. It was, moreover, being perpetrated by a sibling not much older than they, not a person *in loco parentis.* Finally, the resultant injury for which damages are sought is psychic alone. Expert testimony might prove the existence of the plaintiffs' subjective beliefs as to the cause of their distress, but it can give no assurance that those beliefs are grounded in reality. Evidence to that effect, if it exists at all today, is of doubtful reliability.

802 F.Supp. at 490. The judge therefore concluded that the action had been brought "many years out of time," and dismissed the complaint. The plaintiffs appealed, and the federal appellate court has asked us to resolve the potentially dispositive question of District of Columbia law.

## II.

## LEGAL ANALYSIS

*A. Accrual of the Claims.*

■ A civil action "may not be brought after expiration of [the period specified in the

---

2. The complaint alleges that it was not until January 1990 that Ms. Fellez, who now resides in Hawaii, knew that Compton "had committed the aforesaid acts upon her and appreciated their significance." With respect to Ms. Farris, who lives in California, the complaint alleges that it was not until August 1990 that she "appreciated the significance of the aforesaid acts perpetrated by Defendant." It is alleged as to both plaintiffs that "the impact of the sexual assaults from at or about the time of each event until 1990 were unknown or partially known to her."

statute] from the time the right to maintain the action accrues." D.C.Code § 12–301 (1989).[3] The statute does not define "accrues," and the task of identifying the moment of accrual has been left to the courts. *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1198 (D.C.1984).

■ "Where the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs." *Colbert v. Georgetown University*, 641 A.2d 469, 472 (D.C.1994) (en banc) (citation omitted). If the existence of an injury is not readily apparent, however, the claim does not accrue until the plaintiff, exercising due diligence, has "discovered or reasonably should have discovered all of the essential elements of her possible cause of action, *i.e.*, duty, breach, causation and damages." *Id.* at 473 (quoting *Bussineau v. President & Directors of Georgetown College*, 518 A.2d 423, 434 (D.C. 1986) (citations omitted)). In the present case, the last wrongful act is alleged to have occurred approximately twenty-five years ago. Accordingly, but for any legal consequences of the alleged repression of the complainants' recollection, the action is time-barred.

The plaintiffs have placed their reliance on the discovery rule. This court initially adopted that rule in the context of an action for medical malpractice. *Burns v. Bell*, 409 A.2d 614, 615–17 (D.C.1979);[4] *see also Jones v. Rogers Memorial Hosp.*, 143 U.S.App.D.C. 51, 442 F.2d 773 (1971). The discovery rule has, however, been successfully invoked in this jurisdiction in a number of different kinds of cases, including actions for legal malpractice, *see, e.g., Knight v. Furlow*, 553 A.2d 1232, 1234 (D.C.1989), litigation involving a claim of professional negligence and breach of contract by an architect, *see Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d at 1201–04, and product liability actions in which the plaintiff allegedly contracted a latent disease. *See, e.g., Wilson v. Johns–Manville Sales Corp.*, 221 U.S.App.D.C. 337, 342–43, 684 F.2d 111, 116–17 (1982); *Dawson v. Eli Lilly & Co.*, 543 F.Supp. 1330, 1337–38 (D.D.C.1982). *See also Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677, 680 (1981), in which the court held

> the discovery rule to be applicable generally in all actions, and [that] the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong.

In *Ehrenhaft*, this court found it unnecessary "for present purposes" to "reach so far as to apply the [discovery] rule to all cases," *cf. Poffenberger, supra*, and elected instead to determine its applicability on a case-by-case basis. *Ehrenhaft*, 483 A.2d at 1204. We sustained the invocation of the discovery rule in that case, *inter alia*, because the plaintiff, who presumably lacked the requisite knowledge to determine proper design and construction, had reasonably relied on the professional skill and expertise of the defendant, an architect; because the alleged defect was latent in nature; and because, on the record before the court, we were satisfied that the plaintiff's interest in having the pro-

---

3. For several willful torts, including battery, the specified period is one year. D.C.Code § 12–301(4). For actions for which a limitation is not otherwise specified, the period is three years. *Id.* § 12–301(8). *In Saunders v. Nemati*, 580 A.2d 660 (D.C.1990), this court held that the three-year limitation of § 12–301(8) applies to an independent action for intentional infliction of emotional distress. The statute is also tolled for persons whose claims would otherwise accrue before they reach the age of 18, *id.* § 12–302(a)(1), and for persons who are *non compos mentis, id.* § 12–302(c)(2).

The district judge concluded that the gravamen of the female plaintiffs' claim was common law battery, which is governed by a one-year statute of limitations. *Farris I*, 802 F.Supp. at 489 n. 2.

No issue relating to the characterization of the claim was certified to us, and we do not address the question. We note, however, Dr. Compton's contention that the complaint was filed more than a year after Ms. Fellez claimed to have recollected the abuse, so that Ms. Fellez' complaint may be time-barred, at least in part, even if the discovery rule is applied.

4. Before *Burns*, this court noted that fraudulent concealment of a cause of action for legal malpractice tolls the running of the statute of limitations. *Weisberg v. Williams, Connolly, & Califano, et al.*, 390 A.2d 992, 995 (D.C.1978). We also noted the application of the discovery rule by some courts in medical malpractice cases. *Id.* at 996 n. 8.

tection of the discovery rule outweighed the defendant's interest in repose. *Id.* at 1202.

Although the plaintiff's reliance on the defendant's superior knowledge and skill was a factor considered by the court in *Ehrenhaft* and in the professional malpractice cases which preceded that decision, the presence or absence of such reliance has no talismanic significance, and is not dispositive.[5] Rather, the determination as to when a claim accrued has been guided by considerations of basic fairness; the legislature should not be presumed to have intended to deny a plaintiff who did not know, and could not reasonably have known, of her injury at the time that it occurred, her day in court, provided that she filed suit in timely fashion after she learned or should have learned the facts. The discovery rule was developed to redress situations in which the fact of injury "was not readily apparent and indeed might not become apparent for several years after the incident causing injury had occurred." *Ehrenhaft*, 483 A.2d at 1201. Stated a different way, "[a] claimant should not be penalized because he has had the complicating misfortune of not realizing that he has in fact been victimized by a tortfeasor." *Dawson*, 543 F.Supp. at 1335 (applying District of Columbia law) (quoting *Lynch v. Rubacky*, 85 N.J. 65, 424 A.2d 1169, 1175 (1981)). "[A] growing number of our sister states [have] recognized that, in many cases not involving professional malpractice, plaintiffs may, in appropriate circumstances, be blamelessly ignorant of the fact that a tort has occurred, and thus ought not [to] be charged with slumbering on rights they were unable to ascertain." *Poffenberger*, 431 A.2d at 680 (citations and internal quotation marks omitted).

The present case may differ in one technical respect from our previous discovery rule decisions. So far as we can discern from the allegations of the complaint, Ms. Farris and Ms. Fellez do not claim that they were un-

aware of the abuse or of its wrongfulness at the time that it occurred. Rather, they assert that Dr. Compton's conduct forced them to repress their recollection of the experience after the fact. In that limited sense, their claim may be that in 1990 they rediscovered facts which they may previously have known, rather than learning of them for the first time. Because most or all of the abuse allegedly occurred during the women's minority, however, the statute of limitations did not begin to run against either woman until she reached her majority. *See* D.C.Code § 12–302(a)(1). By then, according to the allegations of the complaint, each woman had repressed any recollection of her brother's wrongdoing. Under these circumstances, the broad equitable principles of which the discovery rule is one expression apply to this case.

Refusal to protect a plaintiff from the running of the statute of limitations may be especially unfair where, as alleged in this case, her lack of knowledge of her injuries was proximately caused by the defendant's own wrongful conduct. *See, e.g., Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232, 79 S.Ct. 760, 761, 3 L.Ed.2d 770 (1959), in which the Court applied the principle, "deeply rooted in our jurisprudence," that "no man may take advantage of his own wrong," and precluded the defendant from invoking the statute of limitations where the defendant had falsely represented to the plaintiff that the plaintiff had seven rather than three years in which to sue. *Accord, Fontana v. Aetna Cas. & Sur. Co.*, 124 U.S.App.D.C. 168, 170–71, 363 F.2d 297, 299–300 (1966).[6] This doctrine has been applied, at least implicitly, in childhood sex abuse litigation in which repression of memory was alleged. *See, e.g., Hoult v. Hoult*, 792 F.Supp. 143, 145 (D.Mass.1992), discussed in part II D, *infra*.

---

5. In light of our disposition of this case on other grounds, we need not address the plaintiffs' contention that Compton's position as an allegedly dominant older brother is analogous, for purposes of that rule, to the position of a doctor, lawyer, or architect.

6. *See also Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir.1975), relying on *Glus* and holding, in a case of alleged sex discrimination in employment, that "where wrongful concealment of facts is alleged, ... a party responsible for such wrongful concealment is estopped from asserting the statute of limitations as a defense." *Id.* at 930 (per Wisdom, J.).

### B. The Magnitude of the Claimed Injuries.

Ms. Farris and Ms. Fellez have alleged in their complaint that each of them suffered extremely serious harm as a result of Dr. Compton's wrongful conduct. They assert that, by reason of that conduct, they were rendered incapable, until quite recently, of complaining and of seeking legal redress. On appeal, the plaintiffs, as well as amici NOW Legal Defense and Educational Fund, et al., have relied heavily on scholarly literature to support the credibility both of their claims of injury and of their allegations of repression. Presumably, if the case goes to trial, the plaintiffs will endeavor to support their claims with expert testimony.[7]

In paragraph 20 of the complaint, the plaintiffs have alleged that the incestuous abuse to which they claim to have been subjected during childhood and in their teens had devastating consequences for virtually every aspect of their lives.[8] According to the materials submitted on behalf of the plaintiffs, the women's claimed inability under such circumstances to recollect the abuse was not at all out of the ordinary.

Sexual molestation of children has been described as resembling a "time bomb;" traumatic symptoms may remain hidden for years after the abuse but may be "totally destructive to later adult adjustment." Roland Summit, *Recognition and Treatment of Child Sexual Abuse*, in *Coping With Pediatric Illness* 116 (1983). The abuse, and the threats which often accompany it, render the child helpless, and she must accommodate and learn to live with the pain, both psychological and physical, which has been inflicted by the abuser. The victim accomplishes this forced accommodation by blocking her harrowing experiences from her mind in order to protect her developing psyche from being overwhelmed. *See* Judith L. Herman & Emily Schatzow, *Recovery and Verification of Memories of Childhood Sexual Trauma*, 4 Psychoanalytical Psychology 1 (1987). Thus, according to one of the authorities relied on by amici,

> patients, when faced with a situation that has aroused overwhelming grief, despair, or anxiety may respond by a total repression of the memories of the disturbing events, accompanied by a disappearance of painful effect. The experience of incest ... is fraught with all these emotions— emotions a child finds overwhelming. The fear and pain, and the feelings of abandonment by both the perpetrator and the ... parent who does not rescue the child, cause intense despair. To deal with these fears and emotions, the child must deny their existence by pushing them into her unconscious.

Jill Blake–White & Christine Madeline Kline, *Treating the Dissociative Process in Adult Victims of Childhood Incest*, The Journal of Contemporary Social Work 394 (1985). The result is that

> [m]any, if not most, survivors of child sexual abuse develop amnesia that is so complete that they simply do not remember that they were abused at all; or ... they minimize or deny the effects of the abuse so completely that they cannot associate it with any later consequences.

---

7. Any discussion of the admissibility of any proffered expert testimony regarding the plaintiffs' claims of repression would be premature and beyond the scope of the certified question.

8. Paragraph 20 is not easily summarized. It reads as follows:

 As a direct and proximate result of the Defendant's wrongful actions and sexual abuse and a reasonable foreseeable consequence thereof, Plaintiffs Farris and Sara Fellez, have suffered permanent, severe and continuing injuries, including but not limited to: employment impairment, depression, low self-esteem and confidence, suicidal ideation, physical and psychological trauma, pain and suffering, severe mental anguish, loss of capacity and enjoyment of life, loss of capacity to learn, loss of earnings, loss of earning capacity, emotional distress, marital difficulties, inability to function normally in social situations, fear of physical contact, inability to trust others, fear of intimacy and sexual contact, eating disorders, nightmares, debilitating terror, repression of memories and emotions, post-traumatic stress disorder, humiliation, anxiety, embarrassment, psychological denial, repression, accommodation and dissociation. As a direct and proximate result of defendant's wrongful actions and sexual abuse, Plaintiffs have incurred in the past and reasonably expect to incur in the future, expenses for medical care and psychological treatment, psychological therapy, psychiatric therapy, medication and self-esteem courses.

E. Sue Blume, *The Walking Wounded: Post–Incest Syndrome*, 15 Siecus Rep. 5 (1986). Indeed, one study of 364 survivors of incest is said to have revealed that the average delay between the end of molestation and the first request for treatment was seventeen years. Kathleen A. Kendall–Tackett, *Characteristics of Abuse That Influence When Adults Molested as Children Seek Treatment*, 6 J.Interpersonal Violence 488–89 (1991).[9]

— — —

Lest we be misunderstood, we emphasize that we express no opinion at this stage of the litigation as to the validity or lack thereof of the theories regarding repression and recovered memories on which the plaintiffs and their supporting amici rely. The specific techniques utilized by the female plaintiffs' therapists are not identified in the complaint, and we know nothing about their soundness or reliability. We note that in a number of recent lawsuits there have been allegations that false memories of childhood sexual abuse have been planted during therapy in adult patients' minds. *See, e.g., Sullivan v. Cheshier*, 846 F.Supp. 654 (N.D.Ill.1994) (denying in part a therapist defendant's motion to dismiss the complaint). Earlier this year, a jury in California awarded the father of a patient $500,000 in one of these suits. *Ramona v. Isabella*, No. 61898 (Super.Ct. Napa County, Cal., May 13, 1994); *see* Georgia Sargeant, *Father Wins Suit Against Daughter's Therapists for Implanting Memories*, TRIAL at 95 (July 1994).

In another much-publicized case, a thirty-four-year-old man recently alleged that a high-ranking official of his faith had sexually abused him when he was a teenager. The man subsequently dismissed his action, stating that he was no longer sure that his memories of the alleged abuse, which had been induced by hypnotherapy, were reliable. Georgia Sargeant, *Victims, Courts, Academics Debate Truth of Recovered Memories in Abuse Cases*, TRIAL at 12 (May 1994)

(hereinafter *Victims, Courts, Academics*). One attorney and psychologist who has practiced in the field has characterized the notion of repressed and recovered memories as "only the most recent and most dangerous" in a long line of "bizarre pseudo-psychotherapeutic fads." *See* Mark Hansen, *More False Memory Suits Likely*, Aug. 1994 ABA JOURNAL 36 (quoting R. Christopher Barden, Esq.). According to another psychologist, "[i]t is possible to create an entire memory for a traumatic event that never happened." ELIZABETH LOFTUS, THE MYTH OF REPRESSED MEMORY (1994), quoted in Sharon Begley, *You Must Remember This—Science: How the Brain Forms "False Memories,"* NEWSWEEK, Sept. 26, 1994, p. 68–69. "Recent studies by certain psychoanalysts have questioned the assumption that the analyst has any special ability to help the subject ascertain the historical truth." *Tyson v. Tyson*, 107 Wash.2d 72, 727 P.2d 226, 229 (1986) (en banc) (citing *Wesson, Historical Truth, Narrative Truth, and Expert Testimony*, 60 WASH.L.REV. 331 (1985)).

"Thus far, the debate over recovered memories shows no signs of abating." *Victims, Courts, Academics*, at 91. That debate will no doubt continue in the United States District Court in this case.

*C. Prejudice to Dr. Compton; Burden on the Court.*

If the present controversy were to go to trial, Dr. Compton would be compelled to defend himself against allegations relating to his conduct twenty-five to forty years ago. In his brief, he argues that it would be unreasonable to require him to do so:

> Because time erases evidence, it becomes at some juncture fundamentally unfair to require a defendant to respond to allegations so stale that he cannot possibly marshal an effective defense to them. Statutes of limitations do, after all, exist for a purpose. As the Supreme Court has emphasized, limitations statutes have been

---

9. According to studies relied on by amici, some adult survivors regain memories of their abuse, many years after the fact, after some triggering event (such as a television program on the subject of incest or an account by another victim).

Often, however, recovery is said to be unattainable without appropriate therapy. *See, e.g.,* Christine A. Courtois, *The Memory Retrieval Process in Incest Survivor Therapy*, Journal of Child Sexual Abuse 15, 22 (1992).

enacted by legislatures precisely to "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or the disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *United States v. Kubrick*, 444 U.S. 111, 117 [100 S.Ct. 352, 356, 62 L.Ed.2d 259] (1979).

■ In *Tyson*, 727 P.2d at 228–30, a sharply divided Supreme Court of Washington, holding by a vote of 5:4 that "the discovery rule does not apply to an intentional tort claim where the plaintiff has blocked the incident from her conscious memory during the period of the statute of limitations," *id.* 727 P.2d at 230, also described the prejudice which it thought a contrary rule would generate:

> As time passes, evidence becomes less available. For example, the defendant might have had a critical alibi witness, only to find that the witness has died or cannot be located by the time the action is brought. Likewise, witnesses who observed the plaintiff's behavior shortly after the alleged act may no longer be available. Physical evidence is also more likely to be lost when a claim is stale, either because it has been misplaced or because its significance was not comprehended at the time of the alleged wrong. In addition, the evidence, which is available becomes less trustworthy as witnesses' memories fade or are colored by intervening events and experiences. Old claims also are more likely to be spurious than new ones. With the passing of time, minor grievances may fade away, but they may grow to outlandish proportions, too. Thus, stale claims present major evidentiary problems which

can seriously undermine the courts' ability to determine the facts. By precluding stale claims, statutes of limitation increase the likelihood that courts will resolve factual issues fairly and accurately.

*Id.* 727 P.2d at 228 (citation and internal quotation marks omitted).[10]

■ Dr. Compton contends that these considerations are especially troubling in this case because of the alleged absence, in the district judge's words, of "a perceptible or palpable injury, the existence of which a trier of fact can independently and objectively verify at time of trial." *Farris I*, 802 F.Supp. at 489. To permit a plaintiff to avoid the statute of limitations by asserting that she has repressed her recollection of the alleged abuse—a claim which is easy to fabricate[11] but difficult or impossible to verify—might require the defendant to go to trial with his ability to defend himself severely curtailed, if not completely eviscerated, by the passage of time.

These arguments are plausible, but they do not necessarily carry the day. Although the time between the alleged abuse and the institution of suit in this case has been unusually long, the fundamental complaint of lost witnesses and impaired memories is common to all cases in which the running of the statute of limitations has been deferred or interrupted. In each case, considerations of staleness have been trumped by the unfairness of requiring plaintiffs to sue at a time when, through no fault of their own, the injury was not apparent and they could not reasonably have known about it.

The present case might profitably be compared with a hypothetical one. Suppose that the defendant threw acid in a plaintiff's face

---

**10.** Statutes of limitations are responsive not only to evidentiary concerns, such as those identified in *Kubrick* and *Tyson*, but also to considerations of "repose," *i.e.* "the potential defendant's interest in security against stale claims and in planning for the future without the uncertainty inherent in potential liability." *Wilson*, 221 U.S.App. D.C. at 345, 684 F.2d at 119. Although it may be that Dr. Compton could develop evidence of prejudice along these lines, his principal focus on appeal has been on evidentiary problems. An argument based on impaired capacity to plan for the future is not unique to cases like this one,

and does not depend on Dr. Compton's principal claim here, namely, that the defendant's opportunity to present his defense has been severely prejudiced by the passage of time.

**11.** One court has suggested that "certain victims, when informed of the discovery rule, will add to their inner turmoil by dissembling in order to avoid the bar of the statute." *Petersen v. Bruen*, 106 Nev. 271, 792 P.2d 18, 23 (1990). The court therefore discerned a substantial potential for fraudulent claims. *Id.* 792 P.2d at 25.

and blinded her. As a result of her blindness, which was caused by the defendant, the plaintiff has become disabled from making an identification, and no other evidence is available. Twenty-five years later, however, a new procedure restores the plaintiff's 20:20 eyesight. She identifies the defendant as her assailant from a photograph taken of the defendant on the day of the assault. To apply the statute of limitations against the plaintiff in such a case to defeat recovery would surely be intolerable, for to do so would permit the assailant to profit from his own wrong. *Glus,* 359 U.S. at 232–33, 79 S.Ct. at 761–62.[12]

We stated in *Ehrenhaft* that limitations periods

> find their justification in necessity and convenience rather than in logic.... Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual. *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314 [65 S.Ct. 1137, 1142, 89 L.Ed. 1628] (1945). Accepting the pragmatic purposes served by these statutes, we nonetheless are of the view that the added burden imposed upon a defendant to defend against an "old" claim due to application of the discovery rule is not unreasonable. This determination favors a plaintiff's interest in compensation but is somewhat tempered by the fact that the burden of proof remains upon the plaintiff.

*Id.,* 483 A.2d at 1202. Although the alleged wrongful conduct in this case is not merely "old" but very old indeed, we believe that the reasoning of the court in *Ehrenhaft* is nevertheless instructive for present purposes. *See also McCollum v. D'Arcy,* 138 N.H. 285, 638 A.2d 797, 799 (1994), in which the discovery rule was applied after an even longer lapse of time.

### D. Weighing the Plaintiffs' Claimed Injuries Against the Alleged Prejudice to the Defendant—The Case Law Examined.

The tension between statutes of limitations and the rights of adult victims of childhood sex abuse to compensation for their injuries and the rights of alleged abusers to protection from stale claims has been the subject of much recent litigation [13] and discussion in the law reviews.[14] Having considered these materials as well as our own cases, we now join those courts—apparently a substantial majority—which hold that where a plaintiff has alleged total repression of any recollection of sexual abuse which allegedly occurred during her childhood, her claim does not accrue until the date that she recovered her memory to the extent that she knows, or reasonably should know, of "some injury, its cause, and related wrongdoing." *Knight, supra,* 553 A.2d at 1236. If the defendant disputes the repression, or the date on which the plaintiff recovered her memory, then the issue must be determined

---

**12.** Counsel for Dr. Compton contended at oral argument that the action would be time-barred even in this rather extreme hypothetical.

**13.** *See* Annotation: *Running of Limitations Against Action for Civil Damages for Sexual Abuse of a Child,* 9 A.L.R.5th 321 (1993).

**14.** *E.g.,* Norrie Clevenger, *Statute of Limitations: Childhood Victims of Sexual Abuse Bringing Civil Actions Against Their Perpetrators After Attaining the Age of Majority* 30 J.Fam.L. 447 (1991–92); Camille W. Cook & Pamela K. Millsaps, *Redressing the Wrongs of the Blamelessly Ignorant Survivor of Incest,* 26 U.Rich.L.Rev. 1 (1991); Ann Marie Hagen, Note, *Tolling the Statute of Limitations for Adult Survivors of Childhood Sexual Abuse,* 76 Iowa L.Rev. 355 (1991); Jocelyn B. Lamm, Note, *Easing Access to the Courts for Incest Victims,* 100 Yale L.J. 2189 (1991); Rebecca L. Thomas, Note, *Adult Survivors of Childhood Sexual Abuse and Statutes of Limitations,* 26 Wake Forest L.Rev. 1245 (1991); Carol W. Napi-

er, *Civil Incest Suits: Getting Beyond the Statutes of Limitations,* 68 Wash.U.L.Q. 995 (1990); Alan Rosenfeld, *The Statute of Limitations Barrier in Childhood Sexual Abuse Cases,* 12 Harv.Women's L.J. 206 (1989); James Wilson Harshaw, III, Comment, *Not Enough Time?: The Constitutionality of Short Statutes of Limitations for Civil Child Sexual Abuse Litigation,* 50 Ohio St.L.J. 753 (1989); Carolyn B. Handler, Note, *Civil Claims of Adults Molested as Children,* 15 Fordham Urb. L.J. 709 (1987); Comment, *Adult Incest Survivors and the Statute of Limitations: The Delayed Discovery Rule and Long–Term Damages,* 25 Santa Clara L.Rev. 191 (1985); Melissa A. Salten, Note, *Statutes of Limitations in Civil Incest Suits: Preserving the Victim's Remedy,* 7 Harv.Women's L.J. 189 (1984); Comment, *Tort Remedies for Incestuous Abuse,* 13 Golden Gate U.L.Rev. 609 (1983). Our citations of these articles implies neither agreement nor disagreement with their conclusions.

by the trier of fact, and cannot be resolved on a motion to dismiss the complaint.

The consequences of repression of memory were recently explained by the Supreme Court of Utah in *Olsen v. Hooley*, 865 P.2d 1345 (Utah 1993):

> Memory repression is a psychological process that actively prevents a memory from being recalled. Repression goes beyond mere forgetting and cannot be ascribed to a lack of diligence on the part of the plaintiff. Repressing the memory of operative facts is, in effect, not knowing or being aware of those facts.... [I]t would be unfair to bar Olsen's action before she had an opportunity to assert it.

*Id.* at 1348. In *Olsen*, a suit by a young woman alleging abuse during her childhood by her adoptive father and his sons, the court elected to follow the "substantial majority of courts that have addressed this issue [and] have held that the repression of memories of childhood sexual abuse tolls the applicable statute of limitations." *Id.* at 1349 (citations omitted).[15] The court emphasized, as do we, that

> this case involves a plaintiff who alleges that she totally repressed her memory; it does not involve a plaintiff who remembered the abuse but did not realize until later that the abuse caused the psychological harm suffered.

*Id.* (citations omitted of authorities denying recovery on such facts).[16]

In *Phillips v. Johnson*, 231 Ill.App.3d 890, 174 Ill.Dec. 458, 599 N.E.2d 4 (3d Dist.1992), an uncle was charged with molesting his thirty-five-year-old niece during her childhood. He contended that it would be unfair to require him to defend against such old and allegedly unverifiable allegations, notwith-standing the niece's claim that she had totally repressed her memory of the abuse. The court rejected the uncle's contentions:

> We conclude that the manifest injustice of requiring plaintiff to know that which is inherently unknowable outweighs defendant's difficulty of proof in this case. To hold otherwise would deny a remedy to those who survive childhood sexual abuse by suppressing the memory of the abusive acts.

*Id.* 174 Ill.Dec. at 461, 599 N.E.2d at 7.

The principle that the abuser should not be permitted to profit from his own wrong has also been applied in total repression cases. In *Hoult, supra,* the plaintiff, who was twenty-seven years old at the time her complaint was filed, alleged that she had entirely repressed all memory of sexual abuse inflicted on her by her father during their childhood and early teens. 792 F.Supp. at 143. In applying the Massachusetts discovery rule, the court noted that, according to the affidavits submitted in opposition to the defendant's motion for summary judgment, the plaintiff "could not even remember the sexual abuse itself," and that "the injury caused by the defendant *by its very nature* prevents discovery of its cause." *Id.* at 145 (emphasis added; citations and internal quotation marks omitted). The court thus held, in effect, that a defendant who, through his own wrongful conduct, has caused the plaintiff to repress her recollection of that conduct, cannot avail himself of the statute of limitations to defeat her claim. We agree.

Some of the other cases in which the court refused to dismiss as time-barred complaints alleging that the plaintiff's recollection of childhood abuse had been totally repressed include *McCollum v. D'Arcy, supra,* 638 A.2d at 799; *Petersen v. Bruen, supra* note 11, 792

---

**15.** One circumstance under which Utah courts apply the discovery rule, arises when "application of the statute of limitations would be irrational or unjust where, because of exceptional circumstances, a plaintiff has no knowledge of the cause of action until after it is barred by the limitations period." *Olsen,* 865 P.2d at 1348. In *Olsen,* the court drew an analogy between the alleged repression of childhood abuse and the situation which arose in an earlier case in which the plaintiffs alleged that they were unaware of the death of their ward until after the expiration of the period of limitations for an action for wrongful death. *Id.*

**16.** The court also noted the existence of controversy regarding the accuracy of revised memories and the reliability of the therapeutic methodologies utilized to assist patients in·remembering facts previously repressed. *Id.* at 1349–50. The court therefore concluded that independent corroboration of the allegations of abuse should be required.

P.2d at 20–23;[17] *Osland v. Osland*, 442 N.W.2d 907, 908–09 (N.D.1989); *Lemmerman v. Fealk*, 201 Mich.App. 544, 507 N.W.2d 226, 229–31 (1993); *Evans v. Eckelman*, 216 Cal.App.3d 1609, 265 Cal.Rptr. 605, 608–10 (1st Dist.1990); *cf. Callahan v. State*, 464 N.W.2d 268, 270–73 (Iowa 1990). Without exception, the courts in these cases have been unanimous.

There is some contrary authority. In *Farris I*, the district court relied primarily on *Tyson v. Tyson*, 727 P.2d at 228–30, a 5:4 decision[18] which was promptly overturned by statute. *See* Wash.Rev.Code § 4.16.340 (1988), cited in *Olsen*, 865 P.2d at 1349. The decision in *Tyson* has been rejected by many of the courts to which it has been cited. *See, e.g., McCollum*, 638 A.2d at 799, *Osland*, 442 N.W.2d at 909; *Olsen*, 865 P.2d at 1349; *Johnson v. Johnson*, 701 F.Supp. 1363, 1367–68 (N.D.Ill.1988); *Phillips*, 174 Ill.Dec. at 460, 599 N.E.2d at 6; *Callahan*, 464 N.W.2d at 272. Like several of those courts, we are persuaded by Justice Pearson's dissenting opinion in *Tyson*.[19]

Complaints charging childhood sexual abuse were also dismissed as time-barred, notwithstanding allegations of repressed memory, in *Baily v. Lewis*, 763 F.Supp. 802 (E.D.Pa.1991), *aff'd mem.*, 950 F.2d 721 (3d Cir.1991); *Shippen v. Parrott*, 506 N.W.2d 82 (S.D.1993); *Bassile v. Covenant House*, 152 Misc.2d 88, 575 N.Y.S.2d 233 (Sup.Ct.N.Y.County 1991), and *Lindabury v. Lindabury*, 552 So.2d 1117 (Fla.App. 3d Dist. 1989). In *Baily*, however, the district judge

based his ruling largely on a prediction that the Supreme Court of Pennsylvania would not treat the complaint as timely even where total repression was alleged because "[t]he Pennsylvania courts have been unwilling to allow the incapacity of a plaintiff to toll the statute of limitations," 763 F.Supp. at 808; they would reach that result in spite of the acknowledged "harshness of [this] rule." *Id.* In *Shippen*, the court observed that the legislature of South Dakota had gone even further and specifically rejected the discovery rule. 506 N.W.2d at 85. In *Bassile*, a decision by a trial court, the judge pointed out that, in New York, "there is no delayed discovery rule generally available," because "New York has a long tradition of hostility toward holding the period of limitations in abeyance pending actual discovery of the injury." 575 N.Y.S.2d at 236 (citations and internal quotation marks omitted). Finally, in *Lindabury*, the intermediate appellate court did not address the discovery rule or any comparable equitable doctrine at all, an omission effectively remedied in Judge Jorgenson's persuasive dissenting opinion. 552 So.2d at 1118. In light of *Ehrenhaft* and other decisions in this jurisdiction, we do not believe that *Baily, Shippen, Bassile* or *Lindabury* should be followed in this jurisdiction.

 Dr. Compton contends that if an exception to the running of the statute of limitations is to be made for cases of this kind, then the decision to make it is one of policy which ought to be made by our elected

---

**17.** The court in *Petersen* declined to apply the discovery rule to cases of this kind, but held that if the plaintiff's claims of abuse were corroborated, the statute of limitations would not be applied at all. *Id.*

**18.** One member of the majority, concurring separately, believed that "the arguments of the dissent are most compelling," but thought that the issue was one more appropriately resolved by the legislature. *Id.* 727 P.2d at 230.

**19.** The majority opinion in *Tyson* was based largely on the court's perception that there was "no means of independently verifying [the plaintiff's] allegations in whole or in part" in relation either to the alleged repression of her memory or in connection with the abuse itself. *Id.* 727 P.2d at 229. We agree with Justice Pearson's response:

> The majority's concern is with proof problems. But the issue here does not involve proof problems at all, but rather the applicability or non-applicability of the discovery rule. We are simply to decide whether notions of fundamental fairness entitle the plaintiff to try to convince a court or jury that she discovered or should have discovered her cause of action after it would otherwise have been foreclosed by the statute of limitations. *The trier of fact determines whether a plaintiff has discovered his or her cause of action within a reasonable time.* Ohler v. Tacoma Gen. Hosp., 92 Wash.2d 507, 514, 598 P.2d 1358 (1979). The evidentiary problems which a plaintiff may encounter in convincing the trier of fact of the reasonableness of her late discovery are not our present concern.
> *Id.* 727 P.2d at 231 (emphasis added).

representatives rather than by the courts. The subject may well be an appropriate one for legislative action; we note that the legislature of the State of Washington promptly overruled the decision in *Tyson*, in which the court had held that the discovery rule does *not* apply even where total repression of memory is alleged. Nevertheless, Dr. Compton's argument begs the question presented to us. In the absence of clarifying legislation, it is our obligation to construe the word "accrues" in the existing statute, D.C.Code § 12–301 (1989). We cannot defer the performance of our judicial duty until the enactment of a new law, an event which may or may not occur. Our precedents reflect this court's interpretation of the present statutory language. We noted in *Ehrenhaft*, 483 A.2d at 1204, that the determination whether an action has accrued in any particular context is to be made by the court on a case-by-case basis. 483 A.2d at 1204. We adhere to that holding today.[20]

■ Dr. Compton complains that there is no corroboration either of plaintiffs' claims that Ms. Farris and Ms. Fellez were molested or of their allegation that they repressed their recollections of their abuse. Courts have taken various approaches to the question whether, and at which stage of the proceeding, corroboration is required.[21] We do not resolve that issue here, for it would be premature to do so in the absence of a factual record. The case came to the United States Court of Appeals on appeal from an order granting a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), *see, e.g., Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), and for the purposes of the certified question, that court has assumed that the abuse occurred and that the victims' memory of it was totally repressed.

■ There is no evidentiary record before us; so far as we know, there has been no discovery. Without a crystal ball, no court can predict what, if any, corroboration discovery may produce, and what, if any, evidence may already be in the possession of the parties.[22] Dr. Compton has not yet been deposed. Evidence of the truth or falsity of the claims of repressed memory may (or may not) come from a variety of sources. The potential existence and quality of such corroboration cannot be determined from the face of the complaint. The judge cannot know in advance whether evidence which, as yet, has not been produced, will necessarily prove unreliable. Indeed, we agree with the statement of the court in *Phillips v. Johnson*, *supra*, that

> the *[Illinois] trial court improperly considered the reliability of plaintiff's anticipated evidence in ruling on a motion to dismiss the complaint.* Psychological evidence is generally admissible, assuming that relevancy and foundational requirements are met, and determination of credi-

---

**20.** We note that although the discovery rule has been part of the law of this jurisdiction for many years, the legislature has not elected to revise it or restrict it in any way. We recognize that in this case, the delay between the alleged wrongful conduct and the institution of suit was unusually long. We have stated in that connection, however, that "[i]f there is a perceived need ... to set a determined outer time limit to the discovery rule, the proper way to do it is by a statute of repose." *Bussineau*, 518 A.2d at 436.

**21.** *See Olsen*, 865 P.2d at 1350 (requiring corroboration, such as "similar acts against other persons or evidence of contemporaneous physical manifestations of the abuse") in order to survive a motion for summary judgment; *Meiers–Post v. Schafer*, 170 Mich.App. 174, 427 N.W.2d 606, 610 (1988) (same); *cf. McCollum*, 638 A.2d at 799, and *Lemmerman*, 507 N.W.2d at 229, holding that corroboration is not required. The court stated in *Lemmerman* that "[c]orroboration is a

proof problem, not a requirement to be met before courts can apply the [discovery] rule." *Id.*

**22.** Dr. Compton argues in his brief that "in the case at bar, the complaint pleads no corroborating facts." As the Supreme Court has pointed out, however,

> [t]he decisive answer to this is that the Federal Rules of Civil Procedure *do not require a claimant to set out in detail the facts upon which he bases his claim.* To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

*Conley*, 355 U.S. at 47, 78 S.Ct. at 102 (emphasis added; footnote omitted); *see* Rule 8(a), Fed. R.Civ.P.

bility and weight are matters for the trier of fact.

174 Ill.Dec. at 461, 599 N.E.2d at 7 (emphasis added).[23]

 To uphold the sufficiency of the complaint under the discovery rule for purposes of the motion to dismiss does not deprive Dr. Compton of his opportunity to contest the timeliness of the suit at later stages of the litigation. As the Supreme Court of New Hampshire explained in *McCollum*, in sustaining the trial judge's refusal to dismiss a complaint comparable to the one in this case,

> [o]ur decision today ... does not preclude the defendants from subsequently challenging the plaintiff's allegations regarding the date she discovered or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the defendant's alleged acts. The defendants also are not precluded, upon a showing of prejudice, from arguing that the equities in this case do not support application of the discovery rule.

638 A.2d at 800. In the case at bar, as in *McCollum*, a finding by the trier of fact adverse to the plaintiffs on the limitations issue—*i.e.*, what did each plaintiff know, and when did she know it (or when should she have known it)—would render the suit untimely, and would therefore obviate the occasion for a decision on the merits.[24]

**23.** In this connection, we also note that although the district judge was of the opinion that the plaintiffs' claimed injury was "psychic alone," *Farris I*, 802 F.Supp. at 490, the complaint alleges physical and economic injury as well. See note 9, *supra*.

**24.** As we have suggested in Part I of this opinion, there is some apparent softness in the plaintiffs' allegations in regard to whether the repression of their memories was total or partial, and as to whether that repression extended to the fact that they were abused (rather than only to the plaintiffs' understanding of the wrongfulness of the abuse and of its effect upon their alleged problems as adults). An overwhelming majority of the courts which have confronted the issue have held that the statute of limitations is not tolled in the absence of a claim that the plaintiffs, as adults, totally repressed their recollection of the *fact of the abuse. See, e.g., Doe v. First United Methodist Church*, 68 Ohio St.3d 531, 629

## III.

## CONCLUSION

 As the Supreme Court stated forty-five years ago in a case brought pursuant to the Federal Employers Liability Act,

> If Urie were held barred from prosecuting this action because he must be said, as a matter of law, to have contracted silicosis prior to [the three-year period prior to filing of the lawsuit], it would be clear that the federal legislation afforded Urie only a delusive remedy. It would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view, Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability.

*Urie v. Thompson*, 337 U.S. 163, 169, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282 (1949) (quoted in *Callahan*, 464 N.W.2d at 270–71). Urie, the Supreme Court added, should not be denied recovery on account of "blameless ignorance." *Urie*, 337 U.S. at 170, 69 S.Ct. at 1025; *see also Callahan*, 464 N.W.2d at 271. If either Ms. Farris or Ms. Fellez can establish that her repression of any memory of the alleged abuse was "blameless," then

N.E.2d 402, 408 (1994); *Doe v. R.D.*, 308 S.C. 139, 417 S.E.2d 541, 542 (1992); *Lovelace v. Keohane*, 831 P.2d 624, 630 (Okl.1992) (multiple personalities case); *E.W. v. D.C.H.*, 231 Mont. 481, 754 P.2d 817, 820 (1988); *ABC v. Archdiocese of St. Paul & Minneapolis*, 513 N.W.2d 482, 486 (Minn.App.1994); *Sanchez v. Archdiocese of San Antonio*, 873 S.W.2d 87, 91 (Texas App. 1994); *E.J.M. v. Archdiocese of Philadelphia*, 424 Pa.Super. 449, 622 A.2d 1388, 1392 (1993) (the court, however, allowed suit to proceed under fraudulent concealment theory); *see also Olsen*, 865 P.2d at 1348; *but see Osland*, 442 N.W.2d at 909; *Hammer v. Hammer*, 142 Wis.2d 257, 418 N.W.2d 23, 26–27 (1987). *See also* our recent reiteration, en banc, that

> a plaintiff who has information regarding a defendant's negligence, and who knows that she has been significantly injured, [may not] defer institution of suit and wait and see whether other additional injuries come to light. *Colbert*, 641 A.2d at 473.

she too is entitled to her day in court on the merits.

Accordingly, we answer the certified question in the affirmative. The Clerk is hereby directed to transmit a copy of this opinion to the Clerk of the United States Court of Appeals for the District of Columbia Circuit and to counsel.

*So ordered.*