*1386 OPINION
By the Court,
Rose, J.:
Pursuant to a divorce settlement agreement, appellant Joanne Siragusa (Joanne) perfected a UCC lien on the assets of her ex-husband, Vincent Siragusa, M.D./Siragusa, Chtd. (Vince), relating to several medical practice partnerships. Vince defaulted on marital debts owed to Joanne; Joanne then received a $1.3 million judgment against Vince. Before she could enforce her UCC lien, Vince filed for bankruptcy and alleged that he no longer had any medical practice assets, and that he had transferred his interests to one of his partners free of Joanne’s lien.
Joanne and the trustee of Vince’s bankruptcy estate, appellant Tom Grimmett (the trustee), filed suit against respondent law firm Beckley, Singleton, Delanoy, Jemison & List, Chtd. (Beckley), and its agent and shareholder, Patricia L. Brown/Patricia L. Brown, Ltd. (Brown),[1] the attorney for the medical practice partnerships. The complaint alleged that Brown had masterminded a *1387 scheme to defraud Joanne of her rights in Vince’s medical practice partnership assets in violation of state and federal law. The district court granted summary judgment against Joanne and dismissed her complaint as being barred by the statute of limitations and/or insufficiently pleaded. Joanne appeals from the district court’s summary judgment and dismissal of her claims against Brown. We conclude that the district court erred in granting summary judgment against Joanne and in dismissing her state civil Racketeer Influenced and Corrupt Organization (RICO) and tort causes of action.

FACTS

In 1983, Joanne and Vince entered into a property settlement agreement incident to their divorce. Vince, John Bowers, M.D., and Paul Heeren, M.D., were one-third partners in Heart Institute of Nevada and two related entities — Heart Institute Properties and Heart Institute Catherization Laboratory (collectively “HIN” or the “medical practice partnerships”). Pursuant to the divorce property settlement, Vince received his HIN partnership interest, valued at $2.4 million, as his sole property. To satisfy Joanne’s community property interests Vince agreed to pay Joanne $1.2 million pursuant to a promissory note secured by a UCC lien on all of his interest in the medical practice partnership.
By May of 1987, Vince had defaulted on his debt to Joanne. On November 5, 1987, Joanne obtained a $1.3 million judgment against Vince in state court for breach of his property settlement obligations. On November 10, 1987, prior to the judgment having been reduced to writing and prior to Joanne enforcing her lien on Vince’s partnership interests, Vince filed for bankruptcy.
Brown was the attorney for the medical practice partnerships. In November of 1987, Brown merged her law firm with that of Beckley.[2] Prior to Vince’s filing for bankruptcy, Joanne’s counsel had corresponded with Brown regarding Joanne’s interest in Vince’s share of HIN and a planned reorganization of the medical practice partnerships. HIN was purportedly being reorganized due to severe financial difficulties.
In December 1987, after Vince had filed for bankruptcy, Brown met with the trustee. In January 1988, Vince filed his schedules and statement of affairs with the bankruptcy court, which asserted that Vince no longer had any interest in HIN. Attached to this *1388 schedule was a several hundred page “Addendum,” prepared by Brown, explaining that Vince had been forced to terminate his interest in HIN in September 1987 — prior to filing for bankruptcy — because he had defaulted on the HIN partnership agreements. Vince’s bankruptcy petition and related documents asserted that his marital payment obligations pursuant to the divorce decree were no longer secured by Joanne’s lien.
On May 4, 1988, Vince was released from all dischargeable debts in the bankruptcy. On June 24, 1988, Joanne filed an application in bankruptcy court to examine Vince, Bowers, Heeren, and Brown, concerning the termination of Vince’s partnership interest, the reorganization of HIN, and to subpoena related documents. In her application, Joanne explained that information in the “Addendum” and other documents was “incomplete and inconsistent with information previously obtained from [Vince] in the divorce proceedings.” Joanne stated that it was necessary to immediately examine Brown “as to the acts, conduct, property and financial condition of [Vince].”
On May 2, 1989, Joanne filed an adversary complaint in bankruptcy court against Vince, Bowers, Heeren, HIN, and “Doe” defendants. The adversary complaint alleged that Joanne’s UCC lien was valid, and that Vince had fraudulently conveyed his interest in the partnerships to the remaining members of HIN under the auspices of a forced sale default provision in Vince’s partnership contract. Joanne further alleged that Vince, Bowers, and Heeren had conspired to defraud Joanne of her rights pursuant to the divorce agreement, and asked that Vince’s bankruptcy discharge be revoked.
The adversary complaint referred to HIN’s counsel on several occasions, noting that Brown had told Joanne’s counsel, prior to Vince’s filing for bankruptcy, that the reorganization of HIN would not affect Joanne’s interest. Joanne also raised the issue of whether “backdated” documents had been used in the reorganization. Finally, the adversary complaint alleged that through discovery, Joanne had discovered evidence of fraud, “including material misstatements and omissions in the . . . Addendum” which was prepared by Brown.
In December of 1990, pursuant to an affidavit, Heeren described a scheme allegedly “masterminded” by Brown and Bowers, wherein Brown and the three doctors executed a “paper” reorganization so as to insulate HIN from any of Vince’s divorce liabilities to Joanne. According to Heeren, in numerous meetings Brown and Bowers explained the following: By utilizing backdated documents, it was to appear that Vince had been “thrown out” of the medical practice partnerships ninety days before he filed for bankruptcy; Vince and Heeren were to temporarily transfer all of *1389 their interest in the partnerships to Bower’s alter ego corporation, Cardiology Associates of Nevada (CAN);[3] “all of the preexisting ownership interests” of Bowers, Heeren, and Vince “would be fully and completely restored once Ms. Siragusa’s divorce claims had been resolved;” and Heeren and Vince would continue to receive their partnership share of profits as independent contractor/employees of HIN in the interim.
According to Joanne, Heeren’s affidavit was her first notice that Brown was involved in a conspiracy to defraud her of her interest in Vince’s HIN assets. On December 1, 1990, the federal statutes were changed to allow supplemental jurisdiction in the bankruptcy court. Invoking this federal jurisdiction, on February 28, 1991, Brown was joined as a “Doe” defendant in the adversary bankruptcy complaint on theories of fraud and conspiracy. Brown sought dismissal on statute of limitation grounds; however, the bankruptcy court adopted Joanne’s argument that the complaint against Brown and Beckley “related back” to the original 1989 complaint.
On August 22, 1993, pursuant to an order of the bankruptcy court recommending withdrawal of reference, the federal district court dismissed Joanne’s claims against Brown for lack of subject matter jurisdiction. The federal district court concluded that Joanne could not argue simultaneously that Brown was brought into the action in 1989 for statute of limitation purposes, but was not brought in until after 1990 for supplemental jurisdiction purposes.
In the fall of 1993, Joanne filed a complaint in the instant state action against Brown alleging sixteen causes of action including claims for fraud, conspiracy, and violations of state and federal RICO laws. Joanne filed a similar action in federal district court. On March 14, 1994, the federal action was dismissed on the grounds that the federal RICO claims were barred by the statute of limitations and that the federal court lacked subject matter jurisdiction over the remaining state claims. The court of appeals affirmed the federal district court’s decision. Grimmett v. Brown, *1390 75 F.3d 506 (9th Cir. 1996), cert. dismissed, 519 U.S. 233 (1997).[4]
The state district court (the “district court”) subsequently granted summary judgment against Joanne, concluding that the federal RICO and state law tort claims were barred by the statute of limitations. The district court concluded that the statute of limitations for these claims accrued no later than May 1989, when she filed her adversary complaint in the bankruptcy action. Since no applicable limitations period was greater than four years, the lower court concluded that because Joanne’s claims were not filed before May 1993, they were untimely. The district court rejected Joanne’s fraudulent concealment and equitable tolling defenses to the statute of limitations.
The state RICO claims were also dismissed on statute of limitations grounds and/or for failure to plead a sufficient pattern of continuous racketeering activity. Joanne appeals from the summary judgment and dismissal of her various claims.

DISCUSSION

The district court erred in concluding as a matter of law that appellants’ fraud and conspiracy claims were barred by the statutes of limitation

Summary judgment should be affirmed only if, upon reviewing the evidence in the light most favorable to Joanne, this court finds that no genuine issues of fact were created by the pleadings and proof below. Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989).
In her opening brief, Joanne does not distinguish between her state and federal claims; she argues that all claims were timely. As part of her response, Brown presents support for the state district court’s decision dismissing the federal RICO claims as barred by the Ninth Circuit’s interpretation of the federal four-year statute of limitations. However, in her reply brief, Joanne asserts “[tjhese [(federal RICO)] issues are before the United States Supreme Court .... Consequently, Joanne is not appealing the federal RICO issues, only the Nevada RICO issues.” (Emphasis added.) Accordingly, we conclude that Joanne is not challenging the district court’s dismissal of the federal RICO claims in this appeal. Before we address the dismissal of the state *1391 RICO claims, we will consider the dismissal of Joanne’s tort claims.[5]
NRS 11.190(3)(d) provides for a three-year statute of limitations for fraud actions which accrues “upon the discovery by the aggrieved party of the facts constituting the fraud.” The district court determined that statements in the 1989 adversary complaint demonstrated that Joanne “had knowledge of facts which would have enabled them, in the exercise of proper diligence, to investigate further and file an action for fraud within 3 years or by January 1991.”
By May 1989, Joanne was aware that various members of HIN had concocted a “sham” transfer of Vince’s interests so as to protect those medical practice assets from Joanne’s lien and from being included in the bankruptcy estate. However, we conclude that such awareness did not, as a matter of law, constitute discovery by Joanne of facts constituting the fraud allegedly perpetrated by Brown.
We have held that ‘ ‘ [w]hen the plaintiff knew or in the exercise of proper diligence should have known of the facts constituting the elements of his cause of action is a question of fact for the trier of fact.” Oak Grove Inv. v. Bell & Gossett Co., 99 Nev. 616, 623, 668 P.2d 1075, 1079 (1983); see also Millspaugh v. Millspaugh, 96 Nev. 446, 449, 611 P. 2d 201, 202 (1980) (stating that time of discovery is a question for the fact-finder where “the facts are susceptible to opposing inferences”). The Ninth Circuit has further held that under a discovery-based statute of limitations such as ours, the time of discovery may be decided as a matter of law only where uncontroverted evidence proves that the plaintiff discovered or should have discovered the fraudulent conduct. Nevada Power Co. v. Monsanto Co., 955 F.2d 1304, 1307 (9th Cir. 1992).
Civil conspiracy is governed by the catch-all provision of NRS 11.220, which provides that an action “must be commenced *1392 within 4 years after the cause of action shall have accrued.” We have previously held that the four-year statute of limitations runs from the date of the injury rather than the date the conspiracy is discovered. Aldabe v. Adams, 81 Nev. 280, 286, 402 P.2d 34, 37-38 (1965). In the instant case, the district court concluded that the alleged injury likely occurred in 1987 when Vince’s interests were transferred to Bowers and HIN was “reorganized” by way of transferring assets to CAN and no later than May 1989, when Joanne filed her adversary bankruptcy proceeding. Accordingly, the district court concluded that Joanne’s conspiracy claims expired in May 1993.
Our statute of limitations jurisprudence has significantly evolved since the issuance of Aldabe. In Oak Grove Investors v. Bell & Gossett Co., 99 Nev. 616, 623, 668 P.2d 1075, 1079 (1983), we held “that the term ‘accrued’ as used in NRS 11.220, incorporates the same ‘diligent discovery’ rule that is present in NRS 11.190(3).” We explained that “ ‘ [t]o hold otherwise would transmute the statute from one of limitation into one of abolition. . . . Such a result is not consonant with the legislative purpose of the statute.’” Id. (quoting Malasev v. Bd. of County Road Comm’rs, 215 N.W. 2d 598, 599 (Mich. Ct. App. 1974)).
More recently, in Petersen v. Bruen, 106 Nev. 271, 792 P.2d 18 (1990), we commented on the distinction between the “discovery rule” and the “general rule” of accrual of a cause of action for statute of limitations purposes:
The general rule concerning statutes of limitation is that a cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought. An exception to the general rule has been recognized by this court and many others in the form of the so-called “discovery rule.” Under the discovery rule, the statutory period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action.

The rationale behind the discovery rule is that the policies served by statutes of limitation do not outweigh the equities reflected in the proposition that plaintiffs should not be foreclosed from judicial remedies before they know that they have been injured and can discover the cause of their injuries. . . .

[6]

*1393 106 Nev. at 274, 792 P.2d at 20 (emphasis and footnote added) (citations omitted); see also Massey v. Litton, 99 Nev. 723, 727, 669 P.2d 248, 251 (1983) (holding that a medical malpractice claim accrued when the plaintiff knew or should have known “both the fact of damage suffered and the realization that the cause was the health care provider’s negligence”); Sorenson v. Pavlikowski, 94 Nev. 440, 581 P.2d 851 (1978) (holding that an action for legal malpractice did not accrue until the plaintiff discovered or should have discovered all facts material to the cause of action).
Based upon our post-Aldabe jurisprudence, we hold that an action for civil conspiracy accrues when the plaintiff discovers or should have discovered all of the necessary facts constituting a conspiracy claim. To the extent that Aldabe is inconsistent with our holding today, it is overruled. As in the case of fraud, “[wjhen the plaintiff knew or in the exercise of proper diligence should have known of the facts constituting the elements of [a conspiracy] cause of action is a question of fact for the trier of fact.’’ Oak Grove, 99 Nev. at 623, 668 P.2d at 1079.
In concluding that Joanne’s tort claims accrued when she discovered or should have discovered facts constituting her claims, we must address her argument that part of discovering facts constituting a cause of action is discovering the identity of a specific tortfeasor, to wit: Brown. In Spitler v. Dean, 436 N.W.2d 308 (Wis. 1989) the Wisconsin Supreme Court held that “the identity of the tortfeasor is a critical element of an enforceable claim: .... ‘The statute should not commence to run until the plaintiff with due diligence knows to a reasonable probability of injury, its nature, its cause, and the identity of the allegedly responsible defendant.’” Id. at 310 (quoting Borello v. U.S. Oil Co., 388 N.W.2d 140 (1866)). The Spitler court reasoned:
The public policy justifying the accrual of a cause of action upon the discovery of the injury and its cause applies equally to the discovery of the identity of the defendant in this case. We have consistently recognized the injustice of commencing the statute of limitations before a claimant is aware of all the elements of an enforceable claim. A statute of limitations barring relief to victims before the defendant is, or,could be discovered violates this guarantee of fairness.
*1394 However, ... the expansion of the discovery rale carries with it the requirement that the plaintiff exercise reasonable diligence .... Plaintiffs may not close their eyes to means of information reasonably accessible to them and must in good faith apply their attention to those particulars within their reach.
The issue of reasonable diligence is ordinarily one of fact.
Id. at 310-311 (citations omitted).
Applying this rule, it is clear that mere ignorance of Brown’s identity will not delay accrual of even a discovery-based statute of limitations if the fact finder determines that Joanne failed to exercise reasonable diligence in discovering Brown’s role in the alleged tortious activities. Joanne asserts that Brown concealed her role in the alleged fraudulent and conspiratorial conduct; however, even if there were issues of intentional concealment, such wrongful conduct would not excuse her failure to exercise due diligence. See Western Mountain Oil, Inc. v. Gulf Oil Corp., 575 F. Supp. 813 (D. Nev. 1983). Thus, on remand the trier of fact must determine whether Joanne’s discovery of Brown’s involvement was delayed due to her alleged attempts to conceal her role and whether Joanne could have, nonetheless, discovered her identity earlier through diligent inquiry.[7]

*1395
Dismissal of the Nevada RICO claims

In the instant complaint, Joanne set forth three claims against Brown seeking relief under Nevada’s civil RICO statute, NRS 207.470.[8] The complaint asserts that Brown violated NRS 207.400(l)(b),(c), and (h)[9] by aiding and abetting Vince, Bowers, and Heeren in racketeering activity in'order to “obtain the lucrative financial rewards” of the medical practice partnerships “at the expense and to the detriment of Joanne, the Bankruptcy Estate and the Other Victims.”[10] Specifically, Joanne’s complaint charges Brown with the following “Crimes related to racketeering:”[11] Multiple instances of grand larceny, embezzlement, obtaining money or property by false pretenses, perjury or subornation of perjury, offering false evidence, and securities fraud.[12] Joanne *1396 seeks over $6 million for each of these three violations and asks for treble damages pursuant to NRS 207.470(1).
NRS 207.390 provides:
“Racketeering activity” means engaging in at least two crimes related to racketeering that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents, if at least one of the incidents occurred after July 1, 1983, and the last of the incidents occurred within 5 years after a prior commission of a crime related to racketeering.
The district court appears to have dismissed Joanne’s Nevada RICO claims on two alternate grounds — (1) inadequate pleading of RICO violations; and (2) statute of limitations. We conclude that dismissal on either of these grounds constituted reversible error.

Sufficiency of the pleadings

We first consider whether the district court properly dismissed Joanne’s Nevada RICO claims on the basis of Beckley’s 12(b)(5) motion. In Hale v. Burkhardt, 104 Nev. 632, 764 P.2d 866 (1988), this court stated:
[W]e are mindful that the trial court’s NRCP 12(b)(5) dismissal of the RICO cause of action must be carefully reviewed. A claim should not be dismissed on this ground unless it appears to a certainty that the plaintiff is not entitled to relief under any set of facts which could be proved in support of the claim.
Id. at 636, 764 P.2d at 868 (emphasis added). We then held that “[a] civil RICO pleading must, in that portion of the pleading which describes the criminal acts that the defendant is charged to have committed, contain a sufficiently ‘plain, concise and definite’ statement of the essential facts such that it would provide a person of ordinary understanding with notice of the charges.’’ Id. at 638, 764 P.2d at 869-70. Having reviewed the complaint, we conclude that the Nevada RICO claims were sufficiently pleaded so as to survive the motion for dismissal.
Unlike the claimant in Hale, Joanne sets forth numerous specific acts constituting the asserted crimes related to racketeering. *1397 The complaint alleges that Brown is guilty of grand larceny, obtaining money or property by false pretenses, embezzlement, and/or securities fraud to the extent that she (1) represented to Joanne, the trustee, and the bankruptcy court that there were legitimate reasons for Vince’s removal from the medical practice partnerships; (2) backdated documents submitted to the bankruptcy court in an attempt to legitimize the sham reorganization and transfers of Vince’s and Heeren’s partnership interests to Bowers, who then transferred all of HIN’s assets to Bower’s solely owned corporation — CAN—leaving HIN behind as a mere shell in Vince’s bankruptcy; (3) made agreements with Vince and Heeren to hold their HIN interests “sub rosa” and to restore those interests at a later time; and (4) aided and abetted Bowers in defrauding CAN stockholders who were refused redemption of their stock and not informed of CAN’S full potential liability to Joanne. Joanne’s complaint further asserts specific instances wherein Brown perjured herself or suborned perjury and offered false evidence throughout the bankruptcy proceedings.
In reviewing the sufficiency of Joanne’s complaint, the district court concluded that to plead a Nevada RICO claim, there must be a “pattern of racketeering activity” as is required by the federal RICO statute. The federal RICO statute provides that a “ ‘pattern of racketeering activity’ requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter . . . and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity.” 18 U.S.C. § 1961(5) (1988).[13]
In H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989), the Court reviewed the dismissal of a federal RICO action for failure to state a claim (FRCP 12(b)(6)). The Court concluded that to satisfy the definition of a pattern of racketeering activity, a mere showing of two criminal predicate acts would not suffice; rather, the plaintiff must show both “relationship” and “continuity” — that the racketeering predicate crimes are related, and that they either constitute or threaten long-term criminal activity. H.J. Inc., 492 U.S. at 237-239.
Applying the law of federal RICO, the district court in the instant case opined that “[t]o allege a state RICO claim in Nevada, the plaintiff must allege and prove continued criminal activity or the threat of continued criminal activity.” The district court granted the motion to dismiss upon determining that the *1398 alleged schemes wherein Brown allegedly conspired with Bowers to take over the medical practice partnerships did not constitute a pattern and lacked the requisite continuity of ongoing criminal activity. We conclude that the district court erred in concluding that Nevada’s RICO statute is analogous to the federal statute and requires a showing of pattern and continuity as those terms have been defined in federal jurisprudence.
We have said that “Nevada’s anti-racketeering statutes ... are patterned after the federal [RICO] statutes.” Hale v. Burkhardt, 104 Nev. 632, 634, 764 P.2d 866, 867 (1988). However, we have also noted “that Nevada’s civil RICO statute differs in some respects from the federal civil RICO statute.” Id. at 635, 764 P.2d at 868. One critical distinction is found in comparing the language of 18 U.S.C. § 1961(5) with that of NRS 207.390. The federal statute provides that a claimant must plead a pattern of racketeering activity and that such a pattern requires at least two predicate acts; Nevada’s RICO statute does not speak in terms of a “pattern of racketeering” and provides that racketeering activity means two predicate acts of the type described in NRS 207.390 and NRS 207.360.
In Sedima, S.P.R.L. v. Imrex Co., the United States Supreme Court noted the critical linguistic distinction between “requires” and “means.” 473 U.S. 479, 496 n.14 (1985). The Court explained:
. . . [T]he definition of a “pattern of racketeering activity” . . . states that a pattern “requires at least two acts of racketeering activity,” [18 U.S.C.] §1961(5)(emphasis added), not that it “means” two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a “pattern.”

Id.

In Computer Concepts, Inc. v. Brandt, 801 P.2d 800 (Or. 1990), the Oregon Supreme Court distinguished its state RICO statute from the federal RICO statute: Oregon’s definitional statute uses the phrase “pattern of racketeering activity means engaging in at least two incidents of racketeering activity,” and continues with language similar to that contained in NRS 207.390.[14] Brandt, 801 P.2d at 807 (emphasis added). The Brandt *1399 court concluded that the word “means” (also used in NRS 207.390) implied that the definition was self-contained and there was no additional pattem/continuity requirement. Id. at 807-08. The Oregon court concluded that a plaintiff need only allege the elements clearly set forth in its statute. We interpret our statute in the same manner.
In light of the clear distinction between “means” and “requires” noted by both the Supreme Court and other jurisdictions, the district court was incorrect in its assertion that “[ajlthough Nevada’s RICO statute does not use the word ‘pattern,’ the language of 18 U.S.C. § 1961(5) is functionally no different than our requirement.” Had the state legislature intended Nevada’s RICO provisions to mirror the federal statute in this area, it would have expressly adopted the “requires” language of the federal statute.[15] See State ex rel. Corbin v. Pickrell, 667 P.2d 1304, 1311 (Ariz. Ct. App. 1983) (interpreting Arizona’s RICO statutes and noting the differences between the state and federal versions).[16]
Accordingly, we hold that there is no pattem/continuity requirement as is required under federal law. A state RICO complaint need allege no more than that which is set forth in the Nevada statute. In the instant case, Joanne’s complaint sufficiently set forth at least two “not isolated” predicate acts “that have the same or similar pattern, intents, results, accomplices, victims or methods of commission.” NRS 207.390. Therefore, the district court erred in dismissing Joanne’s state RICO claims for failure to sufficiently plead those causes of action.[17]

*1400
Statute of limitations

We must next consider whether dismissal of Joanne’s Nevada RICO claims was nonetheless proper as being barred by the statute of limitations. NRS 207.520 provides that “a criminal action or proceeding under NRS . . . 207.400 may be commenced at any time within 5 years after the conduct in violation of the section occurs [and] a civil [RICO] action or proceeding under NRS 207.470 may be commenced at any time within 5 years after the violation occurs or after the injured person sustains the injury, whichever is later.”
Joanne’s complaint sets forth several “relevant times” during which Brown allegedly engaged in the various crimes related to racketeering: November 1986 at which time Brown allegedly began planning the sham reorganization of the medical practice partnerships; the fall of 1987 at which time Brown “further devised, conspired, conducted, implemented and/or participated in the Reorganization;” November 10, 1987, the date Vince filed his bankruptcy petition, April 1990 to November 1991 when CAN doctor-employees purchased CAN stock; and late 1992 when CAN stock redemptions were allegedly refused. Joanne maintains that Brown’s scheme to obstruct justice has continued through the filing of the instant complaint.
Applying Nevada’s five year limitations period, the district court found that Vince’s November 1987 bankruptcy filing was a “necessary predicate crime,” which must have been predated by the first predicate crime — conspiracy to divest Joanne of her interest in Vince’s partnership. Thus, the lower court concluded that the “violation” of the RICO statutes occurred no later than November of 1987. The district court next considered when Joanne sustained injury under NRS 207.520. The court concluded that by June of 1988 — the date Joanne applied to the bankruptcy court to interview Brown and the medical practice partners, and sought subpoenas against those same parties — Joanne knew or should have known about their injury and that Brown was involved in a conspiracy and the five year limitations period began to run.
Once again, we note the general rule that the question of when a claimant discovered or should have discovered the facts constituting a cause of action is one of fact. Oak Grove Inv. v. Bell & *1401 Gossett Co., 99 Nev. 616, 623, 668 P.2d 1075, 1079 (1983). Only where uncontroverted evidence proves that the plaintiff discovered or should have discovered the facts giving rise to the claim should such a determination be made as a matter of law.[18] See Nevada Power Co. v. Monsanto Co., 955 F.2d 1304, 1307 (9th Cir. 1992).
In Massey v. Litton, 99 Nev. 723, 727, 669 P.2d 248, 251 (1983) we held that the term “injury” as used in a medical malpractice statute encompassed “legal injury” — that is, “both the fact of damage suffered and the realization that the cause was the health care provider’s negligence.” Likewise, we conclude that the term “injury” as used in NRS 207.520 encompasses discovery of both an injury and the cause of that injury, in this case Brown’s alleged racketeering activity. See Penuel v. Titan/Value Equities Group, Inc., 872 P.2d 28, 31 (Or. Ct. App. 1994) (holding that a state RICO cause of action accrues under Oregon’s five year statute of limitations when the claimants discovered or in the exercise of reasonable diligence should have discovered that they had been damaged and the cause of their damages and concluding that such determinations were factual). We conclude that such factual determinations cannot be made as a matter of law. To the extent that the district court based its decision to dismiss Joanne’s Nevada RICO claims on the statute of limitations, it erred.[19]

*1402
CONCLUSION

We conclude that the district court erred in dismissing Joanne’s state law tort claims as being barred by the applicable statutes of limitations; such a determination must be made by the trier of fact. We further conclude that the district court erred in dismissing her Nevada RICO claims as being insufficiently pleaded or barred by the statute of limitations. Therefore, we reverse the dismissal of all of Joanne’s tort and Nevada RICO claims and remand this case to the district court for further proceedings consistent with this opinion.
Shearing and Young, JJ., concur.

 Except where it is necessary to distinguish between the two, we will refer to Joanne and the trustee collectively as “Joanne.” Likewise, we will refer to Beckley and Brown collectively as “Brown” wherever possible.

 Joanne assigns liability to Beckley through its merger agreement with Brown stating that Brown’s alleged post-merger misconduct was “undertaken by her in the scope, course and capacity as both a principal and agent of, and were ratified, confirmed and adopted by, Beckley.” Joanne further asserts that Beckley “ratified, confirmed, and assumed ... all pre-Merger liabilities of Brown.”

 According to Joanne’s complaint, after Bowers obtained 100% ownership of Vince’s and Heeren’s interests in HIN, he transferred all of HIN’s assets to CAN and sold stock in CAN to various CAN doctor-employees. Bowers told these stockholders that Joanne’s adversary complaint exposed CAN to no more than $250,000 in liability; Bowers did not tell the stockholders that the adversary complaint also sought to undo the HIN reorganization (i.e., the transfer of that entity’s assets to CAN). See Grimmett v. Brown, 75 F.3d 506, 509 (9th Cir. 1996). Joanne’s complaint further alleges that additional CAN stock was sold through November 1991 to other doctor-employees and that in 1992, Bowers told CAN stockholders seeking redemption that their shares were valueless.

 On September 13, 1994, the trustee stipulated to dismissal of his state court claims against Beckley. We direct the clerk of this court to amend the caption on this court’s docket so as to conform with the caption on this opinion.

 The seventh and eighth causes of action are labelled “Fraud and Conspiracy Against Joanne” and “Fraud and Conspiracy Against the Bankruptcy Estate,” respectively. The remaining eight causes of action allege conspiracy against either Joanne or Vince’s bankruptcy estate in conjunction with conversion, intentional interference with contractual relations/prospective economic advantage, and prejudicing/defrauding a lien creditor. In reviewing the Brown/Beckley motion for summary judgment, the state district court concluded that the gravamen of all the state law claims alleged fraud or conspiracy, The parties have not challenged this designation on appeal; therefore, we too shall consider only the statutes of limitations applicable to fraud and conspiracy causes of action. See Hartford Ins. v. Statewide Appliances, 87 Nev. 195, 197-98, 484 P.2d 569, (1971) (stating that the term “action” in NRS 11.190 “refers to the nature or subject matter and not to what the pleader says it is”).

 In Prescott v. United States, 523 F. Supp. 918, 940-41 (D. Nev. 1981), which we cite in Petersen, the federal court held: “Plaintiff who relies upon this delayed discovery rule must plead facts justifying delayed accrual of his action. The complaint must allege: (1) the time and manner of discovery, and (2) the circumstances excusing delayed discovery.” We reject Brown’s con *1393 tention that appellants failed to satisfy the pleading requirements for a claim of delayed discovery. The express requirements of Prescott are not the law of Nevada.

 Joanne was under no obligation to pursue the known defendants (i.e. the medical practice partners) in state court. As such, assuming Brown did wrongfully conceal her role in the activities alleged in the instant complaint, it cannot be said that Joanne could have successfully utilized NRCP 10(a).
However, we specifically reject appellants’ argument that because they were litigating the same issues against Brown in the bankruptcy proceedings as were set forth in the instant complaint, the limitation periods were tolled during the pendency of those bankruptcy proceedings. We disagree with the district court’s conclusion that appellants had “unclean hands” because we conclude that they did not pursue their action against Brown in the bankruptcy proceedings in bad faith. Nonetheless, we hold that our prior cases tolling the statutes of limitations during the pendency of other proceedings are limited to their facts and have no broader application in the instant case. See e.g., State, Dep’t Human Resources v. Shively, 110 Nev. 316, 871 P.2d 355 (1994) (tolling fraud claim during pendency of administrative claim where State was required to pursue administrative action, and law favored resolution in that forum); Copeland v. Desert Inn Hotel, 99 Nev. 823, 673 P.2d 490 (1983) (holding that the doctrine of equitable tolling applies in the context of Nevada’s antidiscrimination laws).
We further reject appellants’ assertion that the limitations periods were tolled until they knew what relief, if any, they would receive in bankruptcy court. See Grimmett v. Brown, 75 F.3d 506, 515-17 (9th Cir. 1996) (rejecting appellants’ same assertion under Ninth Circuit law); Gonzalez v. Stewart Title of Northern Nevada, 111 Nev. 1350, 1353, 905 P.2d 176, 178 (1995) (“An action accrues when the litigant discovers, or should have discovered, the existence of damages, not the exact numerical extent of those damages.”).

 Joanne’s complaint describes four alleged schemes: The scheme to fraudulently acquire and maintain Vince’s medical practice interest; the scheme to fraudulently acquire and maintain Heeren’s medical practice interest; the CAN stock sales scheme; and the scheme to obstruct justice.

 NRS 207.400(1) provides in pertinent part:
It is unlawful for a person:
(b) Through racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any enterprise.
(c) Who is employed by or associated with any enterprise to conduct or participate, directly or indirectly, in:
(1) The affairs of the enterprise through racketeering activity; or
(2) Racketeering activity through the affairs of the enterprise.
(h) To conspire to violate any of the provisions of this section.

 Joanne’s complaint describes these “other victims” as the CAN stockholders whose redemption requests were refused and who were allegedly told by Bowers that their stock was worthless, Valley Bank of Nevada as a bankruptcy creditor who received only $2500 from Vince’s bankruptcy estate in compromise of a $350,000 debt, Heeren, and Vince. We note that if the facts are as Joanne has asserted, Vince and Heeren would not be entitled to recover under state RICO laws. In Allum v. Valley Bank of Nevada, 109 Nev. 280, 283, 849 P.2d 297, (1993), cert. denied, 510 U.S. 857 (1993), we held that, inter alia, a plaintiff seeking RICO damages “must not have participated in the commission of the predicate act.” Although neither Vince nor Heeren are named as defendants in the instant action, Joanne’s complaint alleges that they both took part in Brown’s alleged fraudulent schemes to insulate the medical practice partnerships from Joanne’s interests therein; Vince and Heeren allegedly agreed to transfer their shares in the partnerships to Bowers and, ultimately, to CAN, while continuing to receive full partnership benefits throughout Vince’s bankruptcy proceedings. Thus, it cannot be said that either Vince or Heeren are “victims” of the alleged racketeering activity; the alleged predicate acts are part of a valid RICO claim only to the extent that by their commission Joanne suffered injury.

 These crimes are listed at NRS 207.360.

 Exhibits 1, 4, and 5 to Joanne’s complaint set forth in great detail the specific acts constituting the alleged predicate acts (i.e., crimes related to racketeering) of grand larceny (NRS 205.220), embezzlement (NRS *1396 205.300), obtaining money or property under false pretenses (NRS 205.380), perjury or subornation of perjury (NRS 199.200), offering false evidence (NRS 199.210), and securities fraud (NRS 90.750).

 The federal statute roughly equates “racketeering activity” to those acts which Nevada has labelled “Crime related to racketeering” in NRS 207.360. 18 U.S.C. § 1961(1) (1988).

 Or. Rev. Stat. § 166.715(4) provides:
“Pattern of racketeering activity” means engaging in at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, including a nexus to the same enterprise, and are not isolated incidents, provided at least one of such incidents occurred after November 1, 1981, and that the last of *1399 such incidents occurred within five years after a prior incident of racketeering conduct.

 We have held that certain aspects of federal RICO law are relevant to the interpretation of Nevada’s RICO statutes. See e.g., Allum, 109 Nev. At 286, 849 P.2d at 301 (applying federal RICO causation analysis). However, we reject Brown’s contention that “the intent and effect of Nevada RICO must be the same as Federal RICO where the Nevada legislature has not spoken.” Moreover, the legislature has spoken by choosing to adopt language with critical distinctions from the federal statute.

 In reviewing the relevant legislative history of Nevada’s RICO statute, we note that there was testimony before the Assembly Judiciary Committee stating that Arizona’s RICO statute was relied upon in drafting Nevada’s RICO statute.

 Beckley’s brief asserts that one of the asserted predicate crimes was NRS 205.0832(7), which provides that taking property in which another holds a security interest with intent to defraud that person constitutes theft. Beckley then points out that this statute was adopted in 1989, after the property in which Joanne had an interest was transferred prior to the bankruptcy in 1987. Joanne did not plead this provision in her complaint and merely raised it in response to Beckley’s assertion below that the 1985 theft statutes did apply *1400 and bar Joanne’s claims. Assuming arguendo that NRS 205.0832(7) is not applicable, Joanne’s complaint still sets forth viable predicate acts under NRS 207.360 (e.g. perjury, subornation of perjury, and offering false evidence). Beckley’s instant argument was not the basis of the lower court’s decision to dismiss Joanne’s claims. Under these circumstances we decline Beckley’s invitation to affirm the dismissal of Joanne’s state RICO claims on this alternate ground.

 Both the federal district and appellate courts concluded that Joanne’s federal RICO claims did not accrue until 1989 at which time she filed an adversary complaint against the medical practice partners. See, Grimmett, 75 F.3d at 512. The Ninth Circuit reached this conclusion employing the “injury discovery” rule. Id. at 510. Under this rule (which has been adopted by six of the federal circuits), the federal RICO four-year limitations period “begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.” Pocahontas Supreme Coal Co. v. Bethlehem Steel, 828 F.2d 211, 220 (4th Cir. 1987).
In the instant matter, the federal and state courts each applied the “injury discovery” rule, yet reached differing conclusions. The federal courts found that Joanne knew or should have known of her RICO injury in 1989; however, the state district court found that Joanne’s Nevada RICO claims accrued in 1988. As evidenced by these conflicting results, it is clear that the pleaded facts are subject to varying interpretations.

 Moreover, there is evidence that the statute of limitations issue as it pertains to these Nevada RICO claims was waived by Brown and Beckley. In reply to Joanne’s opposition to Brown’s motion to dismiss, Brown states: “Plaintiffs are absolutely correct, in stating that the statute of limitations for Nevada RICO, .claims is five years. The claims based on Nevada’s RICO statute are not at issue.”
Although Beckley initially argued in its summary judgment motion that the Nevada RICO claims were barred by the statute of limitations, it subsequently filed a motion pursuant to NRCP 12(b)(5) as to the Nevada RICO claims. Beckley then stated in its reply in support of its motion for summary judgment that: “The fourth, fifth, and sixth causes of action are Nevada RICO *1402 claims. These actions will be handled in a separate motion to dismiss filed concurrently with this brief.” The motion to dismiss was not based upon statutes of limitations.